STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

WENDY DRUMM :
:
:
v. : C.A. NO. 08- 3805
:
:
CVS PHARMACY, INC. :

COMPLAINT

PARTIES AND BACKGROUND FACTS

1. Plaintiff Wendy Drumm is a citizen and resident of Providence, Rhode Island. At all times relevant to this matter, she was more than 40 years of age.

2. Defendant CVS Pharmacy, Inc. ("CVS") is a business corporation with its principal place of business in Woonsocket, Rhode Island. At all times relevant to this matter, CVS was engaged in interstate commerce, and employed more than 20 employees.

3. In 2003 Wendy Drumm was a career professional with a great depth of experience in the creative marketing industry. She had for several years been employed at the senior executive level of major national corporations. She had achieved significant professional accomplishments and was known within her field for her expertise and her abilities. She had made her permanent home in Chicago, Illinois.

4. In 2003 CVS engaged a professional executive recruiter to find a person to appoint to the position of its Chief Creative Director. The recruiter became

aware of the plaintiff's credentials, and approached her to determine her interest in the position of Chief Creative Director of CVS.

5. The plaintiff expressed to the CVS recruiter an interest in the CVS position of Chief Creative Director. Following that expression of interest, CVS began active recruitment of the plaintiff for the position. CVS transported the plaintiff from Chicago to Rhode Island for interviews with its chief executive, Thomas Ryan, its President, Christopher Bodine, its Executive Vice President, and Michael Ferdinandi and Helena Foulkes, Senior Vice Presidents.

6. During the process that the plaintiff was interviewing with CVS senior executives, the plaintiff expressed her reservations concerning relocation from her home in Chicago to Rhode Island. The plaintiff specifically expressed a concern that she be provided severance benefits in the event that her employment at CVS should end before normal retirement.

7. CVS responded to the plaintiff's concerns by promising that if her employment with CVS were ever to terminate, for any reason whatsoever, CVS would take care of her and see to it that she maintained her full compensation until she was able to secure a replacement position with another firm.

8. CVS made a formal offer of employment to the plaintiff September 16, 2003, for the position of Chief Creative Director. The terms of employment CVS offered to plaintiff included salary of $170,000 per year; a "target" bonus of 28 per cent, with actual bonus dependent on CVS's financial performance and the plaintiff's performance in her position, with a minimum bonus for the year

2003 of $10,000; benefits including health insurance; a signing bonus of $20,000; stock options at an executive level; additional equity; and reimbursement of the expenses of relocation from Chicago to Rhode Island.

9. In reliance on CVS's promise regarding severance provisions, and the promises contained in the offer letter, the plaintiff accepted CVS's offer of employment, and accepted the appointment of her by CVS as its Chief Creative Director. The plaintiff commenced employment by CVS September 29, 2003.

10. The plaintiff performed her work as CVS's Chief Creative Director at the highest levels of professionalism.

11. The plaintiff met all of CVS's legitimate expectations for the position of Chief Creative Director.

12. In her evaluations for 2003, 2004, and 2006, CVS formally evaluated the plaintiff as meeting its expectations for her performance as its Chief Creative Director. The plaintiff received her 2006 evaluation, formally rating her as meeting CVS's employment expectations, in March, 2007.

13. In her evaluation for the year 2005, CVS evaluated the plaintiff as needing improvement as to one of the aspects of her employment, and placed her on a 60 day plan for improvement to meet CVS's expectations. The plaintiff satisfied CVS's requirements regarding its improvement plan, and brought her performance back to the level of meeting CVS's expectations.

14. Each year that the plaintiff was employed by CVS, she received a performance-based bonus. For each year of her employment, the plaintiff's bonus far exceeded the "target" bonus set forth in CVS's offer letter.

15. Each year that the plaintiff was employed by CVS, she received a merit-based increase in her base salary.

16. Each year that the plaintiff was employed at CVS she received a merit-based award of stock options as part of her compensation.

17. In January, 2007 CVS hired a new Chief Marketing Officer, Robert Price, and appointed him to be the plaintiff's direct superior. In or about March, 2007, Robert Price stated to the plaintiff that she was too old to perform adequately to market CVS. He told the plaintiff that CVS required a younger person with a younger outlook to perform as CVS's Chief Creative Director.

18. During 2007 the plaintiff continued to provide competent and highly professional services to CVS that met or exceeded all reasonable employment expectations for her.

19. On July 20, 2007, CVS, without any prior notice or communication, terminated the plaintiff from its employment. In terminating her, Robert Price stated his opinion that the plaintiff was "paranoid."

20. CVS had a continuing need for the services provided by the plaintiff in her position of Chief Creative Director.

21. CVS has not paid the plaintiff her full compensation since terminating her employment.

**COUNT I**

22. The plaintiff realleges each and every allegation contained in paragraphs 1 through 21 as if stated here in their entirety.

23. The termination by CVS of the plaintiff's employment was an adverse employment action that was motivated by discrimination against the plaintiff on the basis of her age.

24. The plaintiff has suffered damages in the form of lost compensation and benefits, lost opportunity for employment, and future lost compensation and benefits, and has suffered emotional and mental anguish as a direct and proximate result of the actions of CVS in terminating her employment.

25. The actions of CVS in terminating the plaintiff's employment violated the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §5-28-1, *et seq.*

26. CVS willfully violated the Fair Employment Practices Act in terminating the plaintiff's employment.

**COUNT II**

27. The plaintiff realleges each and every allegation contained in paragraphs 1 through 26 as if stated here in their entirety.

28. The actions of CVS in terminating the plaintiff's employment violated the Rhode Island Civil Rights Act, R.I. Gen. Laws §42-112-1, *et seq.*

29. CVS willfully violated the Civil Rights Act in terminating the plaintiff's employment.

**COUNT III**

30. The plaintiff realleges each and every allegation contained in paragraphs 1 through 26 as if stated here in their entirety.

31. The actions of CVS in terminating the plaintiff's employment violated the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*

32. CVS willfully violated the Age Discrimination in Employment Act in terminating the plaintiff's employment.

**COUNT IV**

33. The plaintiff realleges each and every allegation contained in paragraphs 1 through 26 as if stated here in their entirety.

34. CVS breached its contract with the plaintiff.

**COUNT V**

35. The plaintiff realleges each and every allegation contained in paragraphs 1 through 26 as if stated here in their entirety.

36. The defendant CVS negligently inflicted emotional distress on the plaintiff.

**COUNT VI**

37. The plaintiff realleges each and every allegation contained in paragraphs 1 through 26 as if stated here in their entirety.

38. The defendant CVS intentionally inflicted emotional distress on the plaintiff.

WHEREFORE, the plaintiff Wendy Drumm demands judgment against CVS Pharmacy, Inc. for

1. Compensatory damages for lost back pay, compensation, and benefits;
2. Compensatory damages for future lost pay, compensation, and benefits;
3. Compensatory damages for pain and suffering, including emotional and mental anguish;
4. Exemplary and/or punitive damages;
5. Costs of litigation, including attorney's fees;
6. Pre- and post-judgment interest: and
7. All other relief that is available and appropriate at law or in equity.

PLAINTIFF DEMANDS A TRIAL BY JURY

WENDY DRUMM

By her Attorney,

**R. Daniel Prentiss, P.C.**

R. Daniel Prentiss (#0783)
One Turks Head Place Suite 380
Providence, RI 02903
Tel: 401-824-5150
Fax: 401-824-5181